DECISION AND JOURNAL ENTRY.
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made.
{¶ 1} Defendant, Clarence Elkins, appeals from the judgment of the Summit County Court of Common Pleas which granted the State's motion to dismiss Defendant's petition for post-conviction relief as untimely and denied Defendant's motion for leave to file a motion for a new trial. For the following reasons, we affirm.
 {¶ 2} Previously, this Court affirmed Defendant's convictions of murder, attempted aggravated murder, rape, and felonious assault. SeeState v. Elkins (Sept. 27, 2000), 9th Dist. No. 19684, at 1. The Supreme Court of Ohio declined jurisdiction to hear the matter.
 {¶ 3} Thereafter, on May 15, 2002, Defendant filed his petition for post-conviction relief and motion for a new trial. The State responded in opposition. Oral arguments were heard and the court entered its decision denying Defendant's petition for post-conviction relief and motion for new trial. It is from this decision that Defendant appeals raising three assignments of error. Assignments of error one and two have been consolidated to facilitate review.
 ASSIGNMENT OF ERROR I
"The trial court erred in denying an evidentiary hearing, depriving [Defendant] of his constitutional rights."
 ASSIGNMENT OF ERROR II
"The trial court erred in holding that [Defendant's] post-conviction petition was untimely filed under [R.C.] 2953.23."
 {¶ 4} In his second assignment of error, Defendant avers that the trial court incorrectly determined that the petition was untimely filed. Specifically, Defendant maintains that he has satisfied the requirements of R.C. 2953.23(A) and is therefore entitled to an evidentiary hearing on the matter. We disagree.
 {¶ 5} Pursuant to R.C. 2953.21(A)(1), post-conviction relief may only be granted when there has been "a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States[.]" A trial court has the discretion to grant or deny a petition for post-conviction relief and an appellate court will not disturb such a decision in the absence of an abuse of discretion. State v. Glynn, 9th Dist. No. 02CA0090-M,2003-Ohio-1799, at ¶ 4. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 6} Although a defendant may petition for post-conviction relief, certain time requirements must be followed. See Glynn at ¶ 5, citing R.C. 2953.21(A)(2). Pursuant to R.C. 2953.21(A)(2),
"A petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication[.]"
 {¶ 7} The record reveals that Defendant filed the trial transcript on November 16, 1999. As such, for Defendant's petition to be deemed timely, it must have been filed no later than one hundred eighty days after November 16, 1999. However, Defendant filed his petition for post-conviction relief on May 15, 2002, well beyond the statutory time period. Accordingly, the trial court lacked the jurisdiction to entertain Defendant's petition absent Defendant demonstrating that he satisfied the requirements of R.C. 2953.23(A). See Glynn at ¶ 7. See, also, Statev. Hurst (Jan. 10, 2000), 5th Dist. No. 1999CA00171.
 {¶ 8} In order for an untimely petition to be considered, a defendant must demonstrate:
"(1) Either of the following * * *:
"(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
"(b) Subsequent to the period prescribed in [R.C. 2953.21(A)(2)] or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
[and]
"(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted." R.C. 2953.23(A).
 {¶ 9} In the present case, Defendant contends that his conviction is void or voidable on the grounds that he was unavoidably prevented from discovering: (1) evidence identifying an alternative suspect; (2) a key trial witness' recantation; (3) evidence establishing that the police investigation of the crime scene was flawed; and (4) information demonstrating that his trial counsel was ineffective.
 {¶ 10} Upon review, we find that Defendant has failed to satisfy the requirements outlined in R.C. 2953.23(A). Specifically, Defendant has not adequately demonstrated that he was "unavoidably prevented" from discovering either the testimony regarding an alternative suspect or evidence allegedly demonstrating that the police investigation of the crime scene was flawed. Nor has he shown that he was "unavoidably prevented" from discovering facts indicating that his trial counsel was ineffective as Defendant has argued this issue on his direct appeal. Furthermore, a mere blanket assertion that discovery was prevented, without more, is insufficient to demonstrate that one was unavoidably prevented from discovering the facts upon which he must rely to present his claim for relief. See State v. Jalowiec, 9th Dist. No. 02CA008130,2003-Ohio-3152, at ¶ 8.
 {¶ 11} Moreover, even if we were to assume that Defendant was unavoidably prevented from discovering a key trial witness' recantation, Defendant has failed to demonstrate that a constitutional error was committed at trial. See R.C. 2953.23(A)(2); State v. Lott, 8th Dist. Nos. 79790, 79791 and 79792, 2002-Ohio-2752, at ¶ 55 This failure is fatal to his petition as "[p]ostconviction relief is available only to redress constitutional violations." State v. Callihan (Feb. 28, 1995), 4th Dist. No. 94CA2249, quoting State v. Kimble (Sept. 22, 1988), 8th Dist. No. 54154. Accordingly, Defendant has not satisfied the requirements of R.C. 2953.23(A)(2) and the trial court lacked jurisdiction to entertain his untimely petition. Thus, the court correctly dismissed Defendant's petition without conducting a hearing. See State v. Corbin (Dec. 30, 1999), 8th Dist. No. 75627. Defendant's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"The trial court erred by denying [Defendant's] request for a new trial under [Crim.R. 33]."
 {¶ 12} In his third assignment of error, Defendant maintains that the trial court erred when it denied his motion for a new trial. Defendant's assertions lack merit.
 {¶ 13} The decision to grant a motion for a new trial is also within the sound discretion of the trial court. State v. Schiebel
(1990), 55 Ohio St.3d 71, paragraph one of the syllabus. An appellate court will not disturb the trial court's decision absent an abuse of discretion.
 {¶ 14} Pursuant to Crim.R. 33(A):
"A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
* * *
"(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given[.]"
 {¶ 15} Furthermore, before a trial court may grant a motion for a new trial on the grounds that a witness has recanted her testimony, a trial court must determine whether the statements of the recanting witness are credible and true. State v. Perez (Sept. 27, 2000), 9th Dist. No. 3045-M, at 7. See, also, State v. Pirman (1994),94 Ohio App.3d 203, 209. We note that newly discovered evidence recanting testimony given at trial is "looked upon with the utmost suspicion."State v. Saban (Mar. 18, 1999), 8th Dist. No. 73647, quoting State v.Germany (Sept. 30, 1993), 8th Dist. No. 63568. The court is to ascertain the credibility of the witness. State v. Curnutt (1948), 84 Ohio App. 101,110-111. Thus, a motion for a new trial that is based on recanted testimony is to be granted only when the court is reasonably satisfied that the trial testimony given by a material witness was false. Saban, supra, citing Germany, supra.
 {¶ 16} If the court determines that the statements are to be believed, and thus more credible than the witness' trial testimony, it must then discern whether the statements would materially affect the outcome of the trial. Perez, supra, at 7. See, also, Pirman,94 Ohio App.3d at 209. However, "[r]ecantation by a significant witness does not, as a matter of law, entitle the defendant to a new trial." State v.Walker (1995), 101 Ohio App.3d 433, 435. The determination is left to the sound discretion of the trial court. Id.
 {¶ 17} In the present case, the same judge presided at the trial and at the post-conviction proceedings. Therefore, he was able to observe the child-victim and ascertain the credibility of her statements. SeeState v. Moore (1994), 99 Ohio App.3d 748, 755. The trial court was of the opinion that "the child-victim told the truth originally and her change of mind [was] the result of influence from her family and others who have an interest in the success of [Defendant's] [p]etition." The court concluded that the recantation lacked credibility.
 {¶ 18} In support of its conclusion, the court detailed a lengthy reasoning process. The court had many concerns about the child-victim's recantation, which was made four years after Defendant's convictions and only upon being approached by Defendant's wife and his private investigator. In voicing its concerns the court explained:
"One of the most prominent conflicts between the child-victim's statements is her supposed identification of the `look-alike' as the actual perpetrator of the crimes. In the child-victim's second affidavit, she says that when she saw a picture of the `look-alike' she told her mother, "That's him. I'll never forget those eyes." However, in her videotaped deposition, when she was shown a picture of the `look-alike' and was asked twice whether she had ever seen him at her grandmother's house, * * * she responded both times, "No." Also, * * * Defendant claims in his Petition that the child-victim identified the man in the picture as "the rapist." However, after listening repeatedly to the videotaped deposition, the [c]ourt finds that the child-victim's answer was unintelligible, and in fact sounded more like the `look-alike's' first name rather than the words `the rapist.'
* * *
"[Moreover] the child-victim failed to identify the `look-alike' as the man she had seen in [her grandmother's] home the evening of the crimes.
* * *
"In addition, there were several questionable statements made during the videotaped deposition that caused it to lack credibility. First, the child states that after she went to bed, her grandmother opened the door to get some air because it was hot. This is contradictory to the testimony at trial by the lay and expert witnesses who stated that it was cold that evening. The child also states that she thinks her grandmother fell asleep with the door open * * *, but the child stated in the deposition that she was sleeping at the time her grandmother was in the living room. * * * The child also states in her affidavits and deposition that she ran back to her room after seeing the man in the kitchen, and she did not see him again that night. However, the child-victim was very insistent at trial that she saw the man before he punched her in [her] bedroom. Additionally, when asked why she was giving the deposition, she stated, `[b]ecause we got more information.' [Emphasis in original.] This clearly demonstrates that her statements were not based on her own recollection, but caused by others providing her with additional information."
 {¶ 19} Additionally, in analyzing the child's demeanor during the trial as compared to the videotaped deposition, the court stated that at trial the child did not hesitate when identifying Defendant as the perpetrator of the crimes; she even pointed to Defendant in the courtroom. However, during the deposition, the child was hesitant and seemed unsure of her answers. The trial court recalled that she repeatedly looked to others in the room while responding to questions and did not identify the `look-alike' as the man in the house on the evening of the crimes. Furthermore, the court emphasized that "[a]t trial, the child-victim stated that she only saw the back of the man's head in the kitchen, but in her second affidavit she states that she saw the man's face because the light was on and he turned his face toward her."
 {¶ 20} The court also noted that when the child appeared to answer a question the "wrong way," or did not respond with the desired response, the attorney's inflections and her choice of questions would reflect that the answer given by the child was one that was not expected. The court further noted that the attorney would occasionally repeat a question, "as if searching for the correct answer[,]" and the child "makes up" for her "wrong answer" by "providing further details that appear to invoke, by her expressions, positive response from others in the room." Lastly, the court expressed its concerns in regards to the secretive manner in which the deposition was conducted: the State was never notified that a deposition would be conducted nor was it given the opportunity to cross-examine the child-victim during the deposition.
 {¶ 21} In light of the trial court's detailed analysis, we are unable to conclude that an abuse of discretion occurred when the court denied Defendant's motion for a new trial. This is not a case where the court acted in an unreasonable, arbitrary, or unconscionable manner. The judge had the opportunity to view the child's testimony at trial and ascertain the credibility of her original statements. The deposition and affidavit have the effect of asking the judge to now determine that the child's prior statements were false. Ohio law indicates that "[r]ecanting testimony ordinarily is unreliable and should be subjected to closest scrutiny." Taylor v. Ross (1948), 150 Ohio St. 448, paragraph three of the syllabus. In the instant matter, the trial court rationally and thoroughly scrutinized the proffered recantation. Thus, there is no reason to disturb the trial court's exercise of discretion in this matter. Accordingly, Defendant's second assignment of error is overruled.
 {¶ 22} Defendant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
BAIRD, J. concurs.